all right you may be seated this is our first case and only case today this morning people of the state of illinois versus roland breault would the council for the appellate introduce themselves please you have to remember there's old guys up here you have to keep your voice up well there's at least one old and for the appellee you may proceed may it please the court council we have raised four arguments in this appeal if the court will permit i will focus today's arguments on issues one and three our first argument is that the state failed to prove mr breault guilty specifically that the evidence in this case was insufficient to meet the state's burden of disproving beyond reasonable doubt that roland breault acted in self-defense the most crucial evidence in this case is the video it was admitted as a joint exhibit by stipulation of the party significantly the state does not mention the video anywhere in their brief is this court is familiar there are six elements of self-defense that the state was required to disprove beyond a reasonable doubt the only one remaining at issue before this court is whether the use of force was necessary now the fact finder was the jury they saw the video correct what did the state need to say about the video forgetting the other issues understanding they saw the video they made their judgment as to what happened and to whether or not it was self-defense or if your client was the aggressor or became the aggressor what are we to make of that i mean you you're effectively saying setting the other issues aside you want us to reverse the jury verdict that's a heavy heavy burden it is your honor and the jury did in fact uh deliberate over multiple days and on the second day of deliberations they did note to the trial court that they were having trouble they asked the court what they would do if they couldn't come to a verdict but here our argument is that the jury did make its findings they were the trier fact we don't dispute but that it was unsupported by the evidence and that is as i mentioned crucially the video also my client's testimony and there was nothing that was not consistent with that account of events the video was consistent my client's testimony that he acted in self-defense and then additionally here the remaining eyewitness testified that she she denied seeing even one second of the fight she couldn't say who was punching who and uh additionally there was a forensic testimony and the expert gave his firm unrebutted opinion that the fatal wounds in this case would have my client was on the bottom and mr pendergast on top of them so that was wholly consistent again with the testimony of self-defense and with the video there was nothing that the jury heard here that would support its finding what about the fact that the jury sent that note out and brought to the attention that your client didn't have any wounds besides a little cut so that wasn't addressed by the trial court um that there was in fact evidence uh in the record that my client is the only one that had defensive wounds that was based on the evidence the photographs and the testimony of the forensic expert so the jury it's hard to speculate what that meant but it indicates that they seemed mistaken on that because my client did in fact based on the evidence have a defensive wound the only defensive wounds of either of the parties involved so on the issue of whether the use of force was necessary the video shows the sudden physical nature of the encounter in this case the size difference between the two men is apparent the record shows that mr pendergast was nearly six feet tall and 220 pounds described as much bigger and stronger and a difference of approximately 55 pounds larger than my client my client did not arm himself in anticipation of any altercation there was no evidence that of any idea that anything was going to occur and the record shows that he just routinely carried a pocket knife for work and carpentry purposes additionally i carry a pocket knife it took me a lot longer to get it out and use it than your client did perhaps however there is case law that we've cited that supports especially where there is a size disparity that in the sudden unfolding events a defendant is not expected to be infallible in his judgment that the issue is whether it was a reasonable belief and um here the apparent danger of great bodily harm again based on the size the use of force and the video also um contradicts any argument that mr pendergast had backed off or withdrawn because at the moment where my client is shown pulling the knife out of his pocket at first he does pull it out and hold it down by his side and push forward with the other hand not with the hand with his hand so apparently appearing that he is engaged and committed to an altercation not that he's backing off and finally the going back to the forensic testimony uh dr bloom again testified that there was no evidence that uh mr pendergast was for example trying to get away and stabbed you know from behind he said there was nothing to support that but the video shows that there's a significant gap between them mr pendergrass goes off the video and then we just see your client pulling his knife out the video shows some distance the testimony was that at that time the hallway is only uh three to three and a half feet wide so with two men in it uh a space of uh well i can't estimate but certainly less than three feet perhaps a foot not a sizable distance and the diagram uh which there was a a full model but also the diagrams are contained in the record on appeal shows the hallway uh that was the the route to get to the door the employee exit where my client was able to exit the building followed closely by mr pendergast so that at that point both men moved off as they moved down the so we don't know what happened in those 15 seconds but everything that is shown on the video is consistent again with my client's claim of self-defense so considering council don't we look at for purposes of review don't we uh look at this and like most favorable to the state and determine whether or not a reasonable uh jury or in this case uh could decide otherwise yeah and and doesn't doesn't that gap as described by justice cresceaux uh create a situation where a jury could make those uh determinations well again our argument is that there is some slight distance on the video but we know from the additional evidence that it was very small uh and that again as the video shows my client pushing forward and we know the diagram he had to get past to get down the hallway to the exit that uh mr pendergast is making the motion appearing to be fully engaged still at that point and it was the state's burden to disprove self-defense and considering the evidence in this case including the crucial video we argue there was simply no evidence for the jury to rely on council let me ask you about that it appears in your brief i just want to have you clarify you've mentioned the six elements of self-defense and it appears that you're arguing that the state has to disprove all six but isn't it correct that if they disprove any one of those six um then the claim of self-defense fails yes and at this point there's only one that's left in dispute on appeal but yes that is um so because the evidence in this case was critically weak and particularly on the issue of self-defense there were several errors additionally that we've argued were prejudicial and denying mr brialt his right to a fair trial in the minutes after the altercation mr brialt raced home went straight to his landline and called 911 because the cell phone had been damaged the jury never heard the recording of mr brialt telling the 911 operator joe just attacked me i need a police officer i ended up stabbing him i protected myself and he had stabbed he was going to kill me the state successfully got this 911 call excluded pre-trial yet in its rebuttal argument the state argued to the jurors if this person was trying to kill him would he have said he was trying to kill me i had to defend myself none of that comes out wouldn't you in the heat of the moment say he was trying to kill me that's the first thing you would say he was trying to kill me never says anything about that admits he never told the police he was scared or thought joe was going to kill him he never told the police these things that's something he invented all of claims were made in the state's rebuttal argument wait a minute those last remarks related to what he would have told the police that's not got anything to do with the 911 call the argument the state did mention in part the specifics from cross-examination of what my client had and had to police so yes the prosecutor also included uh some comments about you know he didn't tell police specifically he admitted that he didn't say he was gasping for air was choking well is there anything wrong with that not if it was limited but here the state went beyond that and argued he never said these things wouldn't that be the first thing you would say and then that's something he invented the state argued that for the first time eight years after the fact my client made up this claim of self-defense and told it to the jury and this misled the jury on what had actually occurred because the defense was barred from presenting the recording of the 911 call six to seven minutes after my client left and we know that because the recording was continuous and we can hear his drive home and direct walking directly and dialing 911 and this shows that my client did in fact say as among the very first things that he said in the heat of the moment that joe had attacked him he thought he was going to kill him and he had protected himself so again the state was well aware of this recording because it was played in open court at the hearing and the state had moved had objected to it being presented and successfully got it precluded so there was evidence the state was aware of that mr briel did not invent his claim of self-defense and it was prejudicial for the state to comment on this excluded evidence i can't recall did they object to that when it was presented at trial there was no objection we've raised this as a matter of plain error thank you and we can meet that burden because it was a clear obvious error and also because the evidence was extremely closely balanced in this case as we've of course argued the evidence was insufficient but certainly the evidence was closely balanced where the jury deliberated multiple days again expressed its difficulty and there was no evidence contradicting my client's claim of self-defense so this was the issue and due to the closely balanced nature of this the prosecution statements and rebuttal likely misled the jury on the crucial issue of self-defense and contributed to the jury's finding of guilt and under those circumstances plain error would apply this was a prejudicial error and we would ask this court to reverse if not outright on the reasonable doubt argument and remand for a new trial based on this or the additional two issues that we have raised in our brief unless the court has further questions on any of these are the remaining issues i would reserve remaining time for rebuttal thank you thank you this works thank you your honors may it please the court and counsel the standard of the reasonable doubt claim is that any rational trial fact viewing this evidence most likely in the light most favorable to the prosecution could have found the elements proved beyond a reasonable doubt and so one of these elements because the defendant did meet their burden of production on a claim of self-defense is whether this they had the state must disprove the claim of self-defense beyond a reasonable doubt they can do that by disproving any of the six elements of self-defense and here even the first elements whether or not the defendant was the aggressor the defendant has failed on that point because under the white case whenever a perilous situation arose from the defendant's own aggressive conduct he cannot claim self-defense here it's undisputed the defendant goes into the building where he's locked out he sets off the alarm and that prompts kathy dizik and her husband joe pendergrast show up in response to an alarm he knows he's going to set it off because he's been warned he set it off before he knows the code's been changed he wanted to get the new codes they wouldn't give him the new codes there's a business dispute involving the partners at this company there was a change of address made and so they changed the codes on the alarm system they put a padlock on this on the door so he can't get in the server room to shut off the alarm he even goes outside to try to cut the building's power and when that doesn't work apparently because there's a battery backup so this whole situation is the defendant's own making so like in the where a defendant so the jury has this background and understands this business dispute and why or what they infer the defendant is there for yes your honor all this evidence is before the jury so they understand the context of how this particular dispute in the hallway arose there's also a situation where the defendant is going around putting his phone in people's faces at this business without their consent without they're objecting to this they don't want this so when he does this to joe pendergrass that's an aggressive act particularly also when he sees joe he says in aggressive tone what are you doing here and so aggressive even mere words can constitute enough to make someone an aggressor but the whole constellation of facts here the fact that he's setting off the alarm knowing that kathy's going to be there and joe doesn't want kathy to go by herself so knowing that the defendant was there so that they knew what this was all about he's there he's not supposed to be there and so they show up and then he says an aggressive tone like what are you doing here and then he's sticking his phone in his face and that's when it gets swiped away when joe swipes the phone away that's the first physical contact but that doesn't mean that joe was the aggressor in this overall situation so i want to make sure i understand so the state's position is that the defendant being the aggressor is the overall situation and not uh when he has the knife and there's been a either a retreat or a separation of some sort between the person stabbed and the defendant well your honor i would like to get to that part a little bit later yes but yes your honor he also becomes an aggressor even if you agree with my first argument about him being in the building and sticking his phone in the face and saying in an aggressive tone what are you doing here even if you don't accept all that is making him an aggressor for these purposes then he also when there's that separation charges that was the word on 2478 charged joe he had a knife he did not think that joe had a knife but he charged towards joe and then he's also being cross-examined about that with respect to the video and the 3399 on the record very important part of the record is a cross-examination defendant by the prosecutor with respect to this video and the defendant's claim here is that he wants to go out the door that's behind joe well there's also an open door right behind him that he just went out minutes before and he even admitted that so he had a means of escape if he is an initial aggressor then he does have a duty to retreat he can't charge at joe with the knife because he wants to go out a different door that's maybe perhaps more convenient to him or some reason he can't take that knife and charge at joe if joe sees the defendant charging him with the knife now joe has a right to defend himself from the unlawful use of force if they are separated self-defense does not give you the right to charge at someone with the weapon particularly when the other person is unarmed one of the elements of self-defense they have to establish is that the defendant that joe was threatening imminent use of force well i'm not sure they said something about a little motion or something uh like with his hands but it's not like he's actively beating the defendant and then joe and then defendant takes out a knife and stabs him to stop the beating they're separated at that point so it's not necessary to take a knife and run at the person who just swiped a phone away so but my point about the initial aggressor issue is that even in the austin case so i'd say joe swiping the phone away even though that's the first contact between joe and the defendant that does not make joe the aggressor legally because in the austin case this was a case where the defendant goes on a bus he's trespassing on the bus he's not paying a fare he's trying to steal a bus transfer ticket and the bus driver then hits the defendant with a bus transfer punch so that's the first contact in that case but still in the austin case that defendant who goes on the bus improperly and is trying to take bus transfer tickets illegally that bus driver still is not the aggressor even though they make first contact and so that's the whole point is that just swiping away the phone that's being stuck in your face you're not allowed in self-defense to incite the use of force against yourself by doing something aggressive like sticking a phone in somebody's face if you do that and they swipe that phone away then you can't pull out a knife and stab them and say well i was defending myself from a use of force well first of all self-defense also doesn't allow you to do anything in revenge you're only protecting against further unlawful force so even if it was a battery to knock the the phone away you can't you have to have some other further threat of imminent use of force and then the last element which the defendant has to meet because this case involves the of deadly force by the defendant on joe he has to it has to be objectively reasonable here he's asking for full exoneration so it just can't be an unreasonable belief it has to be an objectively reasonable belief that in this situation he has to objectively reasonably believe actually subjectively and objectively reasonably believe that joe was not only capable but intending to inflict death or great bodily harm on him and that's a very important element in a self-defense case involving a deadly weapon when the victim doesn't have a weapon out at the time they're not threatening the defendant with a weapon they're unarmed and so is this person admittedly there's a little bit of a size disparity there but is this person who apparently like the the lacing y'all case cite in the state's brief there's no history of animosity between these people so it's not like he's been beat up before by by joe and he's like oh well if he ever gets hands on me again he's you know gonna break bones or something it's not like that they had no history of animosity and so that's a relevant factor to whether if joe swipes the phone out of his hand does the defendant really believe that joe is going to inflict death or great bodily harm on him with his bare hands is he even capable of that is he intending to do that and how could a defendant subjectively and not only subjectively but actually objectively reasonably believe that joe at that moment the defendant pulls out the knife that joe was capable and intending to inflict at least great violent harm on him with fair hands it is not reasonable and and when this court has to view the judgment the light most favorable to the prosecution then this court would have to affirm on the basis of the and reject the defendant's reasonable doubt claim but especially if this court finds that the defendant was the aggressor he doesn't have a right to self-defense and also he would have a duty to retreat under section 7-4 c1 and with that open door behind him he could easily left through that door and not had to charge at the at the victim with the knife um with respect to the other argument the the closing argument issues the prosecutor here did was they referred to the defendant's statements to police and they they talked about what the defendant did not say the defendant didn't say he was scared for his life or that he thought joe was going to kill him so he did not tell that part to the police and so that was essentially a fair commentary on the evidence and the prosecutor's entitled to talk about the evidence i agree but what about the other part well the 911 call see they're likening this sort of a situation to the prosecutors exclude the 911 call on their motion and then if the prosecutors had said well if this was really a case of self-defense wouldn't the defendant have called 911 if they had argued that to the jury then yes that would be a problem because they knew the defendant called 911 they got that kept out of the jury so but there's no mention about 911 in the prosecutor's arguments so it's not like they're criticizing the defendant for not having called 911 after stabbing joe so that that's why it's not a clear obvious error it's certainly not prejudicial enough to constitute reversible error this is a lengthy case and just a simple comment like that is when the defendant had a chance to talk to the police about what he thought joe was going to do to him and he had that opportunity and that was all in the evidence so i mean it's a it's still a it's still a fair argument for the prosecutor to make about what the defendant did and did not tell the police about what happened so that's why that the there's no actual mention of 911 in the prosecutor's argument so to say that that was reversible error to talk about what the defendant did and did not say to the police just because there happened to have been a 911 call that was not introduced into evidence because the prosecutor it because it was that's the defendant's second argument is it was actually hearsay and there's no abuse discretion with that so the defendant cannot admit self-serving statements because they're hearsay and they're not admissible for the truth of the matter asserted so for that reason then also whether the case was closely balanced they're asking for reversal under the plain error rule and so in order to constitute plain error to be prejudicial under the plain error rule the case has to be so closely balanced that this alleged error might have tilted the scales of justice against the defendant but the case has to be close now there there is some like a little bit of closeness in one sense and the defendant explains why he went down that particular hallway instead of going out the open door behind him but it's still objectively he's rushing at the victim with a knife so if that's on video and everything it's not like he can argue that he's not aggressive in this situation that he didn't become the aggressor by charging joe with the knife and so whether he's the credibility in other words of the jury could have disbelieved the defendant thought well maybe he was trying to get revenge for having his knife swipes his phone swatted away so he's going to charge at joe with the knife and they're going to get into a physical confrontation the jury could have thought that they could have disbelieved during the defendant's testimony but essentially the reason why defendant chose to go down the hallway towards the victim with his knife in his hand and an unarmed victim and then get in a physical confrontation with that knife the reason why the credibility that reason doesn't really matter the defendant did that so that's not disputed so that's why it doesn't really matter why he did that so any dispute or any closeness in the evidence the closest of the evidence mostly got to his mental state so he's charged with murder the jury can't really agree very well on that they come back with involuntary manslaughter so if anything the trouble reaching a verdict might have it done with the mental the defendant's mental state and reason why they ended up on involuntary manslaughter instead of murder so in that case they're not necessarily closely balanced no you can't cite the the jury deliberations for the reason why they might have trouble reaching a verdict when they're trying to use that as evidence of well maybe they were a little hung up on the idea whether this was self defense or not well it could have just been that they were unsure as to the defendant's mental state and so forth he's not guilty of knowing murder they find him guilty of a reckless crime like involuntary manslaughter and so if that's the situation then the jury deliberations really don't help them but it really just comes down to the the powerfulness of the evidence in the record there is a video the the defendant charges he's also responsible for setting up this whole situation acting aggressively and so for that reason to say that he's somehow that is close on the issue of whether he should be completely exonerated for this stabbing it's not close and that's why he cannot show the meet the requirements of plain error with respect to his issues and this court should affirm i'd entertain no other questions you haven't said anything something that counsel for the defendant said about size differential yeah i did your honor i did mention i said i thought there was some size differential um with respect to whether the defendant it would be reasonable for the defendant to objectively reasonable for the defendant to believe that joe was capable and intending to inflict great bodily harm without being armed himself joe didn't have a weapon that he's using there so if the size means that joe's more capable of of making great of great bodily harm he still has to show that it's objectively reasonable for the defendant to believe that joe was intending to inflict at least death or great bodily harm without a weapon and when there's no animosity previously between the two of them well what isn't the animosity inherent in him feeling that he needs to go with his wife back to the business to protect her or stand up for her or confront this guy that's there without permission i don't believe it's like a violence sort of situation i just said animosity i didn't say right i mean this is a contentious i was going to say this is a contentious business dispute it's going to litigation they're trying to dissolve the partnership it seems like joe can understand why he'd want to be there for his wife who has to go turn off the alarm and reset it because the defendant happens to be there after the business is closed i think it's fair to think that you know a husband would want to support a woman who has to go do that after a business is already closed and there's a you know another man there uh who may be causing trouble but that doesn't mean that they've ever had any history of violence it's not a situation where you can reasonably believe that this person joe is going to intend death or great bodily harm just because the only thing he's done at that point is swatted his phone out of the space and that seems like the thing that anybody might want to do if somebody stuck a phone in your face and in a contentious situation uh so it's not to think that joe was somehow displaying uh an intention of inflicting extreme violence on the defendant but just simply not wanting the phone in his face and that's at that point all he had done before the defendant charges him with a knife so so that's why you it's not objectively reasonable to believe that that you can inflict deadly force against an unarmed person it's very limited you can't just stab somebody who's unarmed to death and then claim self-defense when it's not objectively reasonable that that person was not only the joke would have to be the aggressor in that situation would had to have imminently threatened physical violence against the defendant illegally physical violence but also intended and be capable of inflicting at least death or great bodily harm without a weapon and that's just not reasonable under these facts so anything other questions i see none thank you for both the state argues that my client was the initial aggressor again for the first time on appeal and as we've argued in our reply brief and cited the supreme court case in henderson when a prevailing party has made a concession or they can't raise an argument that's inconsistent for the first time on appeal and here at the conclusion of all of the evidence the trial court said the facts that the court saw showed the decedent was the initial aggressor in this case and the prosecutor said this was discussing the jury instruction the defendant was not the initial aggressor agreeing and then argued it wasn't relevant and the court said i think it would be relevant if defendant is not the initial aggressor he has no duty to retreat am i missing something here and the state said no no okay i'm sorry so after the conclusion of the evidence the parties agreed that there was no evidence my client was the initial aggressor and where is it in the record that they agreed at page 35 56 and we say the state agreed because the court said there was no evidence no duty to escape based on the evidence it thought the state said the defendant was not the initial aggressor so they expressed their agreement with that um it goes on to the following page 35 57 as well um but in addition several of the things that the state argued are my client's right to be there well my client was a vice president of this business and he routinely worked there and the alarm codes were removed it was there was evidence without any court order so there was no basis to remove him from the building so the state's argument failed that my client didn't have a right to be there and i've already addressed any argument that my client became the initial aggressor again because of the video and as i've discussed the 26 13 to 26 minutes and 17 seconds where it shows my client pull out the knife and hold it by his side and it shows the decedent curling his fingers in a beckoning motion there's no indication that he appeared to back down he moves off the screen but my client moves off the screen as well the state also and i've addressed in the reply brief uh that the state mentions there was an open door but that is not an exit there's a doorway that my client could have moved through that goes further into the building and if he had you know taken a different route and gone through a different door but there was testimony extensive from the architect who made the model in this case that the only door that my client could have pushed to exit in an emergency is the one that he exited through the closest exterior door if my client had gone through the doorway as the state suggests there was a storage room that it was testified was very full and then you needed to use a key in the lock to exit so again this was a moment of 15 to 30 seconds and my client isn't charged with you know running through all of the possibilities of the closest or the best route of escape but he did in fact escape through the door that was the only one he could push in an emergency um the state in regards to the third argument makes a distinction that the prosecution did not use the words 9-1-1 but that is a distinction without a difference first a jury wouldn't be expected to distinguish between 9-1-1 and police officers and in fact in davis versus washington the united states supreme court noted that if 9-1-1 operators are not themselves police officers they're agents the concurring separate opinion used the term interchangeably police and 9-1-1 but more than that as we've argued the prosecution went beyond simply talking about what my client didn't tell police at the police station where he had explained what he was questioned they didn't get into all of the details and blow by blow it was a bigger picture conversation but in closing argument the state said that my client never said those things and asked the jury in the heat of the moment wouldn't they have said these things he feared for his life when they knew in fact that he had said those as some of the first things that he said counsel i want to go back and ask you about this initial aggressor and you keep saying that the state agreed to that now this is kind of going to dive into the jury instruction issue but the fact that the state wanted that other jury instruction doesn't that reflect that there is no agreement that about the aggressor issue doesn't that show there was never an agreement it doesn't in this case and that's because when the state so if i can step back for a moment the court initially denied the initial aggressor instruction because the court said that it didn't see any evidence to support it and when it was revisited the state did not raise the argument that my client was initial aggressor that there was evidence to support that the state argued that they should be allowed to submit to the jury that uh mr pendergast if if he was the initial aggressor that the jury should consider that and whether he had a chance to withdraw or things like that well that is not and we've cited cases in our brief that is not the inquiry for the jury the jury is only evaluating the defendant whether he was the initial aggressor it's not inquiry it's inquiry is not whether the decedent or anyone else was the initial aggressor it's limited to the defendant and that is why the state's position on appeal is still inconsistent because it never raised an argument below that my client was the initial aggressor so the reason that was given for the jury instruction based on whether or not mr pendergast was the initial aggressor was incorrect and the state doesn't raise that on appeal and that is part of our argument why we argued the so unless the court has further questions we would rely on the arguments made here today and in our briefs and we would ask this court to find based on review of all of the evidence that the state failed to disprove beyond a reasonable doubt that mr brial acted in self-defense and to reverse his conviction for involuntary manslaughter outright in the alternative we asked this court to reverse and remand for a new trial because he was prejudiced by errors that likely contributed to his conviction the exclusion of his statements on the 9-1-1 call as excited utterances the misleading rebuttal argument and the improper jury instruction and because this was a closely balanced case these errors all went to the issue of self-defense and likely contributed to its conviction thank you thank you for your arguments counsel we'll take this matter under advisement and rule in due course